UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X        Docket No.:

GLORIA LUI,

                              Plaintiff,

             -against-                                                    **COMPLAINT**

NEUROCRINE BIOSCIENCES, INC., MICHAEL
CANTANZARITE, MICHAEL KLOEPFER and
JOHN and JANE DOE (said names being fictitious,                           **JURY TRIAL REQUESTED**
the persons intended being those who aided and
abetted the unlawful conduct of the named
Defendants),

                              Defendants.

-----------------------------------------------------------------X

        Plaintiff, **GLORIA LUI** ("Plaintiff" or "Lui") by her attorneys, **MADUEGBUNA**

**COOPER, LLP**, for her complaint herein alleges:

## I.        THE NATURE OF THIS ACTION

        1.        This is an action for declaratory judgment and money damages to remedy

discrimination on the basis of race, ancestry, color and caretaker status in the terms, conditions

and privileges of employment under 42 U.S.C. § 1981 as amended by the Civil Rights Act of

1991, 42 U.S.C. § 1981(a) ("Section 1981"); the New York Human Rights Law as contained in

New York State Executive Law, § 296 *et seq.* ("NYSHRL"), and the New York City Human

Rights Law as contained in the Administrative Code of the City of New York, § 8-107 *et seq.*

("NYCHRL").

        2.        Lui contends that the terms, conditions, and privileges of her employment

relationship with Defendant NEUROCRINE BIOSCIENCES, INC. ("NEUROCRINE") were

adversely affected because of her race, ancestry, caregiver status, and she was not paid earned

and vested wages in violation of New York law.

3.      Lui is an Asian woman of Chinese descent who has caregiver responsibilities for her elderly parents, particularly her recently deceased father.

4.      At that time, Lui's father was undergoing serious medical issues, including needing to receive dialysis due to several hospitalizations.

5.      Specifically, Lui contends that due to her race, ancestry, color and caregiver status, she:

    (i)      faced discriminatory comments, including calling her the "triad," a reference to Chinese gangsters, a racial slur which quickly became a nickname within Lui's entire team, asking her how "her people" celebrated holidays, questioning whether she celebrated Thanksgiving and telling her that Italian and Chinese peoples were alike because of the mafia and triads;

    (ii)     was denied promotions to managerial positions;

    (iii)    was forced to give up well-performing Queens and Long Island territories in favor of white employees, causing significant economic loss and inconvenience given her caregiver status;

    (iv)     was given false negative performance reviews and falsely accused of poor performance;

    (v)      was removed from handling a lucrative account; and she had no choice but to resign her employment; and,

    (vi)     was not paid her final but earned bonus.

6.      As a result of her forced resignation, designed to mitigate her damages, Lui lost and gave up a number benefits, including NEUROCRINE shares valued at over $120,000.00.

7.      Lui therefore also brings this action for declaratory judgment, monetary damages,

- 2 -

liquidated damages, and attorney's fees and costs pursuant to the New York Labor Law § 191, *et seq.* ("NYLL") and New York state law to recover earned wages that remain unpaid.

## II.   **JURISDICTION AND VENUE**

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      This Court has supplemental jurisdiction over the state causes of action pleaded.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.   **PROCEDURAL REQUIREMENTS**

11.     After commencing this action, Plaintiff will serve a copy of the complaint upon the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code, Section 8-502(c).

## IV.   **PARTIES**

12.     Lui is a 41 year-old Asian female of Chinese descent.

13.     Lui was employed by NEUROCRINE from April 2017 to October 2019 as a Neuropsych Account Specialist for the Queens and Long Island, New York regions.

14.     Lui is a resident of the City and State of New York.

15.     NEUROCRINE is a foreign corporation organized and existing under the laws of the State of Delaware, and its corporate headquarters is located at 12780 El Camino Real, San Diego, California 92130.

16.     NEUROCRINE is authorized to do business under the laws of the State of New York.

17.     At all relevant times, Defendant MICHAEL CANTANZARITE

- 3 -

("CANTANZARITE") was (and is) the Regional Specialty Manager for the New York/New Jersey metro region of NEUROCRINE.

18.     From April 2017 to October 2018, CANTANZARITE was Lui's manager and immediate supervisor.

19.     CANTANZARITE, a white male, is sued here both in his personal and official capacities.

20.     At all relevant times, Defendant MICHAEL KLOEPFER ("KLOEPFER") was (and is) a Regional Specialty Manager with NEUROCRINE.

21.     From October 2018 to her forced departure from NEUROCRINE, KLOEPFER was Lui's manager and immediate supervisor.

22.     KLOEPFER, a white male, is sued here both in his personal and official capacities.

23.     During all relevant times, each Defendant had policymaking authority and was responsible for ensuring that employees are not subjected to discriminatory and/or retaliatory practices.

24.     At all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Lui.

**V.      FACTS COMMON TO ALL CAUSES OF ACTION**

_Lui's Skill, Qualifications and Background:_

25.     Lui holds a Bachelor of Science in Business Administration degree from State University of New York at Old Westbury.

26.     Lui has achieved a long and distinguished career in the pharmaceutical industry, working in different positions and sectors throughout the industry with increasing responsibilities.

27.     In May 2006, Lui began her career in the pharmaceutical industry as a Sales Representative with Daiichi Sankyo Pharmaceuticals, where her performance ranked in the top third of the company and she was able to develop strong working relationships with physicians who purchased the company's medications.

28.     In March 2008, Lui moved to Strativa Pharmaceuticals and took a position in Professional Specialty Sales.

29.     In 2010, at Strativa Pharmaceuticals, she ranked second of two hundred employees, earning the President's Club award, successfully launched three new products and expanded her work territory to private offices covering Brooklyn, Queens and Long Island.

30.     Lui became a Diabetes Care Specialist – Manhattan South with Novo Nordisk Pharmaceuticals in August 2012.

31.     As a Diabetes Care Specialist, Lui won the company's 2013 Circle of Excellence award, trained district sales employees and served as a liaison within the Asian-American population in Manhattan South.

32.     Based on her excellent work with Novo Nordisk, in August 2015 Lui joined Valeritas, Inc. as the Territory Business Leader – Long Island and Queens.

33.     Under just six months of Lui's tenure, Valeritas experienced a 380% growth, and she was able to strengthen her relationships with physicians in the Queens and Long Island areas.

34.     In April 2016, Lui moved to Shire PLC as an Ophthalmic Sales Specialist – Queens, where she ranked in the top five sales specialists nationally and assisted other specialists in understanding and interpreting data and trends within their own territories.

*Lui is Hired by NEUROCRINE*:

35.     In April 2017, following an interview, Lui was hired by NEUROCRINE as a Neuropsych Account Specialist.

36.     Lui was hired to cover the Queens and Long Island territories or districts.

37.     Upon Lui being hired to cover the Queens and Long Island territories, CANTANZARITE became Lui's assigned Manager and immediate supervisor.

38.     At the time of her hiring, Lui was the only East Asian and Chinese employee working in this district.

39.     As a Neuropsych Account Specialist, Lui was responsible for launching, educating and promoting the specialty drug Ingrezza, which is used to treat tardive dyskinesia, and training customers on processes and the resources involved in obtaining the medication and emphasizing patient benefits.

40.     At NEUROCRINE, Lui ranked first in her Queens and Long Island district and within the company's top 50% for performance and volume of treatment forms submitted.

41.     Lui also won three consecutive monthly Summer Sizzle awards for highest volume of forms submitted and an award for delivering hope and best practices and ranked first in "Elevate Your Game" for highest volume during one month of Ingrezza's launch.

42.     At all relevant times, Lui performed her duties in an excellent manner and never received any discipline or negative performance evaluations.

*Lui Receives Shares of NEUROCRINE Stock upon Onboarding:*

43.     As part of her benefits package, Lui received 1,000 shares of restricted NEUROCRINE stock, and earned additional restricted shares annually based on her superior performance.

44.     Under NEUROCRINE's policies and procedures, Lui's shares were to vest 25% per year.

*Lui is Entitled to Performance Bonus under NEUROCRINE's Incentive Bonus Program:*

45.     At the beginning of her employment, Lui became entitled to earned bonus payments with an annual target amount of up to $40,000.00.

46.     The bonus is based on individual goal attainment and not NEUROCRINE's overall performance.

47.     The bonus is determined by volume produced by an employee within given targets met in the assigned geographic territory each quarter of the year.

*Lui is Discriminated against by her Supervisors (Background Allegations):*

48.     As soon as Lui started working with NEUROCRINE in April 2017, CANTANZARITE, her manager and immediate supervisor, began to pressure Lui to give up the Long Island portion of her territories and focus only on selling to physicians in Queens.

49.     CANTANZARITE discriminatorily claimed that Lui's "different background" meant she could not work in Long Island, despite Lui arriving at NEUROCRINE with over ten years of experience in the pharmaceutical industry.

50.     CANTANZARITE's message to Lui was clear from the very start and two-fold: *First*, NEUROCRINE would only tolerate Asian salespersons working solely in immigrant-

- 7 -

heavy territories like Queens. *Second*, Asian salespersons were not welcome in whiter and wealthier territories like Long Island.

51.     However, Lui, who had forged many connections with physicians in Long Island, was well-acquainted with the territory and refused to give it up to a non-Asian employee.

52.     Lui hit the ground running and soon performed better than any other salesperson in her district.

53.     Rather than celebrate her accomplishments, CANTANZARITE began calling Lui the "triad," a discriminatory reference to Chinese gangsters in the action-comedy film *Rush Hour 2*.

54.     CANTANZARITE's racial slur quickly became accepted as a nickname for Lui amongst her entire team, including KLOEPFER.

55.     Over her objections, CANTANZARITE continued to make comments about Lui's Chinese ethnicity, including asking how "her people" celebrated holidays, questioning whether she celebrated Thanksgiving and telling her that Italian and Chinese peoples were alike because of the mafia and triads.

*Defendants Deny Lui Promotion to a Marketing Position and a Reimbursement Manager Position Based on her Race and Caregiver Status (Background Allegations)*:

57.     At all times, CANTANZARITE knew that Lui's father was undergoing serious medical issues, including his need for dialysis following several hospitalizations.

58.     CANTANZARITE also knew that Lui was her father's caretaker and that she needed to and did take personal sick days off to care for him.

59.     In or around October and December 2017, Lui applied for promotion to both a marketing position and a Reimbursement Manager position.

60.     However, despite Lui's superior qualifications, she was denied the promotions, which on account of unlawful discrimination, went to a person not of Asian or Chinese descent.

61.     CANTANZARITE ensured Lui would not be promoted by failing to inform the hiring manager that Lui was on a long-planned overseas vacation and had not waited to apply or interview at the last minute, as the hiring manager had accused her of doing.

62.     As result, Lui suffered loss and damages, including salary increase of approximately 20% of her annual salary (or about $25,000.00) and promotion to a management position which would have then increased her stock grant from 1,000 shares to 3,000 shares of restricted stock.

*Defendants Deny Lui Promotion to another Reimbursement Manager Position*:

63.     In June 2018, Lui applied for promotion once again to the position of Reimbursement Manager.

64.     Lui was the only internal candidate who was qualified for the position given her superb performance and familiarity with the Queens and Long Island territories.

65.     When Lui sought the support of her director, Zone Director – East, Denise Prindiville ("Prindiville") for the promotion, Lui learned that CANTANZARITE had told Prindiville that Lui "sandbagged" her first quarter with NEUROCRINE.

66.     This false allegation clearly and directly suggested that Lui intentionally did not perform well in an effort to make her subsequent quarters and growth look impressive.

67.     In reality, Lui's first quarter performance was consistent with the company's overall performance that quarter, a fact that was known to CANTANZARITE.

68.     Additionally, CANTANZARITE knew Lui was acting as a caretaker for her father during her first quarter with NEUROCRINE.

69.     The false "sandbagging" claim was merely a pretext to cover the fact that NEUROCRINE did not want to promote a top-performing Asian salesperson who was the obvious and most qualified candidate to be named Reimbursement Manager.

70.     Lui had a strong initial interview for the Reimbursement Manager positions with NEUROCRINE employee Kevin Malloy in New York.

71.     She was informed that the next step in the process would be to interview at the California home office; however, this interview was never scheduled.

72.     Ultimately, CANTANZARITE sabotaged the California interview, Lui's upward mobility with NEUROCRINE and her relationships with other NEUROCRINE employees, causing her to lose the position.

73.     Lui later learned that the Reimbursement Manager position had gone to Teddy Alcantara, an external candidate of non-East Asian and non-Chinese descent.

74.     Lui again suffered loss in the form of loss of salary increase of no less than 20% of her annual salary and assuming a management position with increased stock grant of at least 3,000 NEUROCRINE shares.

*Defendants Forced Lui to Give Up the Queens and Long Island Territories in Favor of Newly Hired White Females*:

75.     In or around July 2018, CANTANZARITE informed Lui that beginning in October 2018, KLOEPFER would become her new manager.

76.     On July 27, 2018, during a conference call with CANTANZARITE, KLOEPFER, Prindiville and Director of Human Resources Brenda Van Vreeswyk ("Van Vreeswyk"), Lui was forced to give up her Queens and Long Island territories in favor of two newly hired white female employees.

77. This discriminatory geographic downgrade left Lui covering only Brooklyn South, an area that was farthest from Lui's home and inconvenient for her commute in light of her caregiver status for her elderly father.

78. At the time Lui's territories were discriminatorily removed from her, Defendants remained well aware of her caregiver status.

79. Moreover, at that time, the performance of Brooklyn South was less developed than the Queens and Long Island territories, in which Lui had always been performing well.

80. The unjustified and discriminatory geographic downgrade to a less developed, worse performing and farther territory caused Lui significant economic loss.

81. To the knowledge of CANTANZARITE and KLOEPFER, the geographic downgrade caused Lui to lose bonuses for the work she had performed building the Queens and Long Island territories, which ultimately benefited her white replacements.

82. The geographic downgrade also violated Lui's status as a caregiver, as it was done specifically knowing that she was caring for her sick and elderly father.

83. Indeed, as of the July 27, 2018 meeting, CANTANZARITE and KLOEPFER knew that Lui had recently moved back into her parents' home in Queens to be her father's full-time caretaker and assist him in getting to dialysis appointments.

84. Overall, Lui was pressured by CANTANZARITE and KLOEPFER to accept the change to the less developed Brooklyn South territory. When Lui asked for a salary increase to offset some of her losses, her request was denied.

85. Ultimately, Lui accepted the change to Brooklyn South because she feared being terminated.

*Lui is given a False Negative Performance Review*:

86.     On or about December 18, 2018, Lui was scheduled to attend her annual review and, despite no longer being Lui's manager, CANTANZARITE continued to discriminate against her by giving Lui a negative annual review.

87.     CANTANZARITE and KLOEPFER also refused to reschedule the review after Lui explained that her mother had fallen and been hospitalized with a broken hip just three days prior.

88.     Even though they refused to accommodate Lui's schedule request, only KLOEPFER attended the review to give Lui the false appraisal CANTANZARITE drafted.

89.     Lui immediately disputed the review, as it was based on no real feedback and was discriminatory, given that CANTANZARITE, who knew that Lui was acting as caretaker for her parents, had previously suggested she obtain outside care for them and claimed they were distracting Lui from work.

*Lui is Removed from Handling a Lucrative Account in or around January 2019*:

90.     In or around January 2019, CANTANZARITE, who continued to target Lui despite no longer being her manager, removed Lui from an account with doctors' offices in Brooklyn and Staten Island.

91.     Although Lui had been splitting the account with Melissa D'Angelo, a newly hired white female, CANTANZARITE removed Lui from this lucrative account, causing Lui loss estimated to be no less than $25,000.00.

92.     CANTANZARITE removing Lui from this lucrative account is yet another instance where white employees were treated more favorably than Lui, the only employee of East Asian and Chinese descent in her district.

*Lui is Further Falsely Accused of Poor Performance*:

93.     Despite Defendants' discrimination against her, Lui continued to perform well for NEUROCRINE.

94.     However, once in June 2019 her Brooklyn territory experienced a slight and temporary dip, KLOEPFER immediately confronted Lui, falsely claiming overall poor performance and blatantly indicating that she might be subjected to excessive and additional scrutiny.

95.     This unwarranted accusation caused Lui to again fear for her job and suffer sleepless nights and anxiety that required medical treatment.

*Lui Resigns on October 21, 2019, Loses Shares and is Not Paid Earned and Vested Bonus*:

96.     Due to Defendants' continuing discrimination against Lui on the basis of her race, ancestry and caregiver status, Lui had no choice but to give notice, on October 21, 2019, that she will be resigning from NEUROCRINE, and that her last day of employment would be November 1, 2019.

97.     As a result of her forced resignation, Lui requested but was not allowed to keep the 1,246 NEUROCRINE shares that she had accumulated as part of her compensation package.[1]

98.     At the time of her forced resignation, the 1,246 NEUROCRINE shares Lui had earned were valued at approximately $124,051.76 based on the stock's price of $103.66 at closing on November 1, 2019 and $95.46 at closing on December 30, 2020, for an average of $99.56 per share.

99.     In addition, NEUROCRINE owed Lui her earned bonus based on her performance for the third quarter of 2019.

---

[1] Lui is not making a claim for the lost shares valued at about $124,051.76, but pleads the loss to show the enormity of the harm she suffered as a result of Defendants' unlawful conduct.

100.    Pursuant to NEUROCRINE's bonus program, as of November 1, 2019, her last day of employment, Lui had earned a bonus based on her past performance in the period covering July, August, and September, 2019 or for the third quarter of 2019.

101.    The third quarter of 2019 bonus was due and payable by NEUROCRINE in November 2019.

102.    NEUROCRINE failed to pay Lui her earned bonus.

103.    During her exit interview on October 23, 2019, NEUROCRINE Director of Human Resources, Van Vreeswyk, promised Lui that the earned bonus would be paid, but to date NEUROCRINE has failed and refused to pay the bonus earned by Lui for the third quarter of 2019.

104.    At the time of her forced resignation, the unpaid but earned bonus due Lui for the third quarter of 2019 was in the amount of $13,590.43.

105.    By failing to pay Lui her actually earned bonus for the third quarter of 2019, NEUROCRINE contravened New York's longstanding policy against the forfeiture of earned wages.

*Lui Sustains Significant Loss and Damages:*

106.    Defendants took all the foregoing actions in order to deprive Lui of employment opportunities and other contractual opportunities because of her race, ancestry and caretaker status.

107.    As a proximate result of Defendants' discriminatory conduct, Lui suffered significant monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

108.    As a further proximate result of Defendants' actions, Lui has been placed under the care of physicians due to anxiety, insomnia, elevated stress levels, severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

109.    Defendants' conduct was outrageous and malicious, intended to injure Lui, and carried out with reckless indifference to Lui's protected civil rights, thereby entitling her to punitive damages.

110.    Lui has no complete, plain, clear or adequate remedy at law.

### FIRST COUNT AGAINST ALL DEFENDANTS
**(Race and Ancestry Discrimination under Section 1981)**

111.    Lui repeats and realleges each allegation in each numbered paragraph above.

112.    Defendants subjected Lui to differential terms and conditions of employment because of her race and ancestry.

113.    Specifically, Defendants subjected Lui to the following adverse actions because of her race and ancestry:

a.    She was denied promotion to a Reimbursement Manager position in which she was well-qualified;

b.    She was forced to give up her lucrative and well-performing Queens and Long Island territories in favor of two newly hired white females;

c.    She was removed from handling a lucrative account with offices in Brooklyn and Staten Island; and,

d.    She was falsely accused of poor performance and given false negative performance review.

114.    Defendants took the foregoing actions in order to deprive Lui of equal

employment opportunities and other contractual opportunities on account of her race and ancestry.

115. Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Lui has been denied her right to equal employment opportunity in violation of Section 1981.

116. By reason of the foregoing, Lui has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SECOND COUNT AGAINST ALL DEFENDANTS**
**(Race, Color and Ancestry Discrimination**
**in Violation of the NYSHRL)**

117. Lui hereby repeats and realleges each allegation in each numbered paragraph above.

118. At all relevant times, Lui was an "employee" within the meaning of the NYSHRL.

119. By adversely affecting the terms, conditions and privileges of Lui's employment because of her race, color and ancestry, Defendants violated the NYSHRL.

120. By reason of the foregoing, Lui has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**THIRD COUNT AGAINST ALL DEFENDANTS**
**(Race, Color, Ancestry and Caregiver Status Discrimination**
**in Violation of the NYCHRL)**

121. Lui hereby repeats and realleges each allegation in each numbered paragraph above.

122. At all relevant times, Lui was an "employee" within the meaning of the NYCHRL.

123. At all relevant times, Lui was a "caregiver" within the meaning of the NYCHRL.

124. Lui was satisfactorily performing the duties required by the position.

125. Defendants subjected Lui to differential terms and conditions of employment because of her race, ancestry and caregiver status.

126. By adversely affecting the terms, conditions and privileges of Lui's employment because of her race, ancestry and caregiver status, Defendants violated the NYCHRL.

127. By reason of the foregoing, Lui has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## FOURTH COUNT AGAINST DEFENDANT NEUROCRINE
### (Breach of Contract for Unpaid Bonus)

128. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

129. NEUROCRINE entered into an employment contract with Lui.

130. By the terms of the employment contract, periodic quarterly bonuses based on her individual attainment were to be paid to Lui as part her of compensation.

131. The considerations set forth in the employment contract were fair and reasonable.

132. Lui performed and met all conditions required of her in accordance with the terms and conditions of the employment contract.

133. NEUROCRINE failed, neglected, and refused to pay Lui's bonus due, as required by her employment contract, for the third quarter of 2019.

134. By reason of the above, NEUROCRINE violated Lui rights under the terms of the employment contract and owes Lui an amount to be determined at trial, but believed to be no less than $13,590.43 with interest.

## FIFTH COUNT AGAINST NEUROCRINE
### (Failure to Pay Wages (Bonus) in Violation of NYLL)

135.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

136.    At all relevant times, Lui was an "employee" within the meaning of the NYLL.

137.    At all relevant times, Defendant NEUROCRINE was an "employer" within the meaning of the NYLL.

138.    NEUROCRINE violated NYLL § 191(c) by failing to pay Lui a bonus due to her in accordance with the agreed terms of the employment contract for the third quarter of 2019.

139.    All of these payments constitute "wages'" within the meaning of NYLL §§ 190, *et seq*.

140.    NEUROCRINE had no good faith basis to withhold Lui's earned bonuses for the third quarter of 2019.

141.    NEUROCRINE willfully, intentionally, and deliberately withheld these wages owed to Lui, despite her demand for payment of such compensation, in violation of NYLL § 193.

142.    By reason of the above violations, Lui is owed bonus in an amount to be determined at trial but believed be no less than $13,590.43 with interest, in accordance with the provisions of Article 6 of the NYLL, specifically § 191(1)(c), together with reasonable attorney's fees, 100% percent of the recovery as liquidated damages, interests, costs, and disbursements.

## SIXTH COUNT AGAINST DEFENDANT NEUROCRINE
### (Alternative Pleading - Unjust Enrichment)

143.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

144. Lui is entitled to recover under the equitable principle of unjust enrichment because NEUROCRINE has denied and taken away from her compensation, bonus, and benefits to which she earned and is entitled.

145. NEUROCRINE was enriched at Lui's expense and it is against equity and good conscience to permit Defendant NEUROCRINE to retain what is owed to Lui.

146. Lui is entitled to compensation commensurate to her and bonus in an amount to be established at trial, plus interest, attorney's fees and costs.

## SEVENTH COUNT AGAINST DEFENDANT NEUROCRINE
### (Alternative Pleading - Breach of the Covenant of Good Faith and Fair Dealing)

147. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

148. Lui's employment contract with NEUROCRINE contains an implied duty of good faith and fair dealing.

149. There is and was no legitimate basis for withholding the bonus due and owing to Lui, and NEUROCRINE withheld such benefits in bad faith.

150. As a result of NEUROCRINE's wrongful conduct in violating the covenant of good faith and fair dealing, Lui has suffered damages in an amount to be established at trial.

## VICARIOUS LIABILITY

151. At all relevant times, NEUROCRINE is vicariously liable for the actions of the individual defendants.

## PUNITIVE DAMAGES

152. Lui claims punitive damages by reason of the individual Defendants' wanton, unrepentant, reckless and egregious conduct herein-above alleged.

**WHEREFORE,** Lui prays that this Court grant her judgment containing the following

relief:

a.  Impanel a jury to hear Lui's claims;

b.  An award of damages in an amount to be determined at trial to compensate Lui for her monetary loss and damages, including her loss of past and future earnings, bonuses, compensation, and other employment benefits;

c.  An award of damages in an amount to be determined at trial to compensate Lui for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

d.  An award of damages in an amount to be determined at trial to compensate Lui for violating her rights under Section 1981, the NYSHRL and the NYCHRL, as pled in the First, Second and Third Counts;

e.  For the Fourth Count for Breach of Contract, an award of damages for the unpaid bonus in an amount to be determined at trial with interest, but estimated to be no less than $13,590.43 plus interest;

f.  For the Fifth Count for unpaid wages under the NYLL, an award of damages in an amount to be determined at trial, but estimated to be no less than $$13,590.43, together with reasonable attorney's fees and an additional amount as liquidated damages equal to 100% of the total amount of the unpaid bonus found to be due, pursuant to Section 198 of the NYLL, with interest thereon, costs, and disbursements;

g.  For the Sixth Count for Unjust Enrichment, an award of damages for the value of the unpaid bonus that is no less than $13,590.43 plus interest, attorney's fees and costs;

h.       For the Seventh Count for Breach of Covenant of Good Faith and Fair Dealing, an award of damages in an amount to be established at trial, but estimated to be no less than $13,590.43 plus interest;

i.       For all claims an award to reflect the negative tax consequences of the verdict in Plaintiff's favor;

j.       An award of punitive damages to be determined at trial for each cause of action, where applicable;

k.       An award of reasonable attorney's fees and costs related to Lui's claims under Section 1981, the NYSHRL and the NYCHRL; and,

l.       Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       March 22, 2021

                    Respectfully Submitted,

                    _____
                    SAMUEL O. MADUEGBUNA, ESQ.
                    **MADUEGBUNA COOPER LLP**
                    Attorneys for Plaintiff, GLORIA LUI
                    30 Wall Street, 8th Floor
                    New York, New York 10005
                    (212) 232-0155

To:      DEFENDANTS

        NEUROCRINE BIOSCIENCES, INC.
        c/o Corporation Service Company
        80 State Street
        Albany, NY 12207-2543

        MICHAEL CANTANZARITE
        c/o Neurocrine Biosciences, Inc.
        12780 El Camino Real
        San Diego, CA 92130

MICHAEL KLOEPFER
c/o Neurocrine Biosciences, Inc.
12780 El Camino Real
San Diego, CA 92130

*UNITED STATES DISTRICT COURT*
*EASTERN DISTRICT OF NEW YORK*                     *Docket No.:*
-----------------------------------------------------------------------------------------------------------------
*GLORIA LUI,*

*Plaintiff,*

*-against-*

*NEUROCRINE BIOSCIENCES, INC., MICHAEL CANTANZARITE, MICHAEL KLOEPFER and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

*Defendants.*
-----------------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-----------------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*
_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

---

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*
_____

*Attorneys for*